UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| ANTHONY J. McDIARMID, | ) |
| Plaintiff, | ) Case No. 1:07-cv-770 |
| v. | ) Honorable Robert J. Jonker |
| COMMISSIONER OF SOCIAL SECURITY, | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). On December 23, 2003, plaintiff filed his application for benefits, claiming a February 3, 2003 onset of disability. (A.R. 41-43). Plaintiff's claim was denied on initial review. On April 27, 2006, plaintiff received a hearing before an administrative law judge at which he was represented by counsel. (A.R. 453-87). On May 23, 2006, the ALJ issued a decision that plaintiff was not disabled. (A.R. 17-23). On June 24, 2007, the Appeals Council denied review (A.R. 8-10), and the ALJ's decision became the Commissioner's final decision. On August 9, 2007, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claim for DIB benefits. Plaintiff argues that the court should overturn the Commissioner's decision because the Commissioner did not give controlling weight to the opinions of plaintiff's treating physician Richard Ball, M.D. (Statement of Issue, Plaintiff's Brief at 1, docket

# 7). Upon review, I find that plaintiff's argument is patently meritless. I recommend that the Commissioner's decision be affirmed.

### **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute

differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability of February 3, 2003, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Plaintiff had the following severe impairments: degenerative changes in the lumbosacral spine with a history of disc herniation and cauda equina, depression disorder and drug dependency. (A.R. 19). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ determined that plaintiff's subjective complaints were not fully credible:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.
>
> The claimant relates all of his problems to a motor vehicle accident in January 2003. His description of ongoing low back pain and symptoms including frequent loss of control of bladder and bowel are not substantiated by the objective medical evidence. X-rays of the

> lumbar spine dated September 24, 2003, showed normal post-surgical appearing [sic] lumbar spine with fusion at L5-S1 (Exhibit 11F, p. 3).
>
> In a letter dated February 12, 2004, Dr. Steven Swanson, who conducted a neurological consultation, reported that after reviewing post-operative x-rays and MRI scans, he did not believe that the claimant has persistent nerve root compression causing his persistent symptoms because he did not see obvious encroachment of the instrumentation into the spinal canal on diagnostic tests. He therefore recommended additional testing (Exhibit 15F, p. 2). X-rays of the lumbar spine with flexion and extension views dated March 1, 2004 showed changes of BAK fusion at L5-S1, but no other abnormalities were seen and no evidence of instability; and a CT scan revealed changes of [a] BAK fusion at L5-S1 as well, but good alignment, no compromise of the central canal and no evidence of disc herniation or foraminal impingement (Exhibit 19F). Finally, a more recent MRI dated February 13, 2006 documented no evidence of complication, central spinal stenosis or disc protrusion (Exhibit 25F).
>
> The claimant also alleges that he has 11 "bad days" per month where he has to lie down[,] but again there is no objective medical support. The claimant lacks credibility regarding his limitations. He is not fully compliant and has a history of narcotic-seeking behavior and not attending appointments (Exhibits 10F and 11F). He was apparently kicked out of a pain clinic program because of these problems (Exhibit 11F). The claimant is able to continue many activities including hunting which he described as a "handicap hunt," fishing, attending church, going to school events, visiting the American Legion, driving every couple of days, using [a] computer, reading and watching television. He complained he has difficulty sleeping at night[,] but this could be due to hi[s] lying down about 1/3 of the day and napping on and off.

(A.R. 21). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited

range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work (i.e., lifting up to 20 pounds occasionally and 10 pounds frequently, and standing and/or walking and/or sitting for a total of six hours in a normal 8-hour workday), but never climbing ladder/rope/scaffolds and no more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching or crawling. He would also require a sit/stand option at will, no concentrated exposure to vibrations, extreme heat, wetness and hazards, and the use of lower extremities no more than occasionally. He is mentally limited to 1-2 step tasks and no more than occasional contact with the public, co-workers and supervisors.

(A.R. 20). The ALJ found that plaintiff was unable to perform his past relevant work as a sales manager and floor installer. (A.R. 22). Plaintiff was thirty years old as of his alleged onset of disability date, and thirty-four years old as of the date of the ALJ's decision. Thus, plaintiff was classified as a younger individual. (*Id.*). The ALJ found that plaintiff "has at least a high school education and is able to communicate in English." (A.R. 22). The ALJ found that the transferability of job skills was not material to the determination of disability. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age and with his RFC, education, and work experience, the VE testified that there were approximately 9,000 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (A.R. 484-85). The ALJ held that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 22-23).

**1.**

Plaintiff argues that the ALJ's decision should be overturned because the ALJ failed to give controlling weight to the opinions of plaintiff's treating physician, Richard Ball, M.D. (Plf. Brief at 1-3). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Gaskin v. Commissioner*, No. 07-1130, 2008 WL 2229848, at * 2 (6th Cir. May 30, 2008)("A physician's opinion that a claimant is disabled is entitled to no deference because it is the prerogative of the Commissioner, not the treating physician, to make a disability determination."); *Stiltner v. Commissioner*, 244 F. App'x 685, 689 (6th Cir. 2007). The

ALJ carefully examined Dr. Ball's opinions and rejected them because they were not supported by objective medical evidence and they were inconsistent with the record as a whole. (A.R. 21). A treating physician's opinion is not entitled to controlling weight if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Pascoe v. Commissioner*, 137 F. App'x 828, 837 (6th Cir. 2005); *see also Bingaman v. Commissioner*, 186 F. App'x 642, 647 (6th Cir. 2006)("Although the opinion of a treating physician is generally accorded great weight, such deference applies only where the physician's opinion is based on sufficient medical data."); *Bell v. Barnhart*, 148 F. App'x 277, 285 (6th Cir. 2005)("[R]egardless of whether Dr. McFadden was a treating physician, his opinion was entitled to controlling weight only if it was 'well-supported my medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record.'")(quoting 20 C.F.R. § 404.1527(d)(2)). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007).

Plaintiff's argument ignores the objective x-ray, MRI, and CT scan evidence regarding plaintiff's post-surgical condition that the ALJ cited in his opinion. (A.R. 224, 301-02, 380-82). The ALJ's finding that Dr. Ball's opinions were not entitled to controlling weight is well-supported on this administrative record. The ALJ's opinion satisfied the procedural requirement of

giving "good reasons" for not giving controlling weight to Dr. Ball's opinions. *See Smith v. Commissioner*, 482 F.3d at 875-76; *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006); *see also Turner v. Commissioner*, 267 F. App'x 456, 460 (6th Cir. 2008); *Anthony v. Astrue*, 266 F. App'x 451, 458-59 (6th Cir. 2008). Applying these factors (A.R. 20), the ALJ determined that the extreme restrictions proffered by Dr. Ball in an April 7, 2006 "Lumbar Spine Residual Functional Capacity Questionnaire" (A.R. 415-19) were not consistent with the course of plaintiff's medical treatment, and could not be reconciled with the record evidence:

> As for the opinion evidence, the residual functional capacity assessment of Dr. Ball is given no weight because it was filled out incorrectly, and is inconsistent within itself and with the objective medical evidence. Also, Dr. Ball appears to [have] based his conclusions on the claimant's subjective complaints rather than objective criteria. For instance, Dr. Ball opined that the claimant would need to lie down approximately 10 minutes per hour on average. Yet, based on his treatment notes, the claimant's only positive objective sign was a mild[ly] reduced range of motion secondary to L5-S1 fusion, and the claimant's medication causes only minimal drowsiness. Furthermore, Dr. Ball reported earlier that he expected the claimant to improve after surgery (Exhibits 13F, p. 7 and 17).

(A.R. 21).

Dr. Ball was an advocate for plaintiff in his dealings with AAA Insurance Company, his former employer Home Depot, and the Social Security Administration. John M. Cilluffo, M.D., was plaintiff's treating surgeon. (A.R. 186-89). On June 6, 2003, Dr. Ball noted that the April 16, 2003 x-rays ordered by the treating surgeon showed "normal postoperative changes with no evidence of complications." (A.R. 282). Plaintiff had no major deficits in lower extremity strength. (*Id.*). Plaintiff had some "mild dysfunction of bowel function, primarily constipation" which plaintiff appeared to be managing relatively well with stool softeners. (*Id.*). Dr. Ball stated as follows with regard to plaintiff's application for DIB benefits:

> The patient is applying for Social Security Disability which at least with respect to his regular job involving heavy lifting in the carpet section at Home Depot is probably not unreasonable. I have explained to him that I do not expect him to have long-term disability.

(A.R. 283).

Five days later, on June 11, 2003, Dr. Ball wrote a letter "To Whom It May Concern" regarding his justification for prescribing the medications Neurontin, Ultram, Klonopin and Zoloft. Dr. Ball wrote, "If the insurance company persists in this position and refuses to cover these [medications], I would simply advise Mr. McDiarmid to obtain legal counsel with my support." (A.R. 281).

Dr. Ball's October 31, 2003 progress notes make only a passing reference to plaintiff's discharge from a pain clinic. (A.R. 276). On September 19, 2003, plaintiff had appeared at Munson Medical Center seeking medication, specifically, Duragesic[1]. Plaintiff related that he had

---

[1] The Physician's Desk Reference contains an emphatic warning regarding Duragesic's potential for abuse: "Duragesic contains a high concentration of a potent Schedule II opioid agonist, fentanyl. Schedule II opioid substances which include fentanyl, hydromorphone, methadone, morphine, oxycodone, and oxymorphone have the highest potential for abuse and associated risk of fatal overdose due to respiratory depression. Fentanyl can be abused and is subject to criminal

no loss of bowel or bladder control or abdominal pain. Plaintiff's straight leg raising tests were negative bilaterally. When doctors at Munson advised plaintiff that they would not provide plaintiff with narcotic medications, plaintiff requested Tylenol No. 3 as an alternative. (A.R. 220). When Dr. Webb expressed his concern that plaintiff might already be over-medicated, and stated that absent a more thorough examination plaintiff would not be provided with medication, plaintiff became very angry and left the medical center. (A.R. 220-21).

On November 15, 2003, Dr. Ball wrote a letter expressing his opinion that if AAA Insurance Company denied coverage, the company would lose the lawsuit that plaintiff would file against it:

> It has come to my attention that AAA is planning on canceling insurance coverage on Mr. McDiarmid related to his episode in early 2003 where a motor vehicle accident was associated with the development of a ruptured lumbar disc and a "cauda equina syndrome", a very serious neurological condition that can be associated with parapeligia and loss of bowel/bladder function.
>
> Were the matter to come up in court and I was asked to state "with a reasonable degree of medical certainty, it was more likely than not that Mr. McDiarmid's problems are related to his motor vehicle accident", I would have to answer strongly in the affirmative, i.e. I think a physician would look foolish to argue that the cauda equine syndrome was not the result of Mr. McDiarmid's motor vehicle accident.
>
> I therefore think that if the matter were to enter litigation, that it is unlikely that AAA Insurance would win this case.
>
> I would therefore suggest that it may be in the best interest of all parties involved that Mr. McDiarmid's expenses related to, both directly and indirectly, his cauda equine syndrome, continue to be covered by AAA Insurance.

(A.R. 275).

---

diversion. The high content of fentanyl in the patches (Duragesic) may be a particular target for abuse and diversion." PHYSICIAN'S DESK REFERENCE, 2352 (62nd ed. 2008).

On December 22, 2003, Dr. Ball examined plaintiff and Ball wrote letters addressed to plaintiff's employer and attorney. Dr. Ball's progress notes from the December 22, 2003 examination reveal that plaintiff had "normal strength" and only "mild" bowel/bladder dysfunction. (A.R. 271). The progress notes include Dr. Ball's opinion that plaintiff would be capable of performing work with restrictions of "no more than 25 pounds of lifting on an occasional basis with perfect ergonomics and no repetitive bending/stooping/twisting." (A.R. 272). Plaintiff had advised Dr. Ball of his desire to participate in Home Depot's kitchen design program. Dr. Ball stated, "I think this is a very realistic goal and certainly think that he needs to pick vocational retraining in a job that is less demanding for his back." (*Id.*). Dr. Ball's December 22, 2003 letter to Home Depot (A.R. 273-74) stated that plaintiff could return to work at Home Depot with restrictions:

> I would clear the patient to return to work at this time with lifting restrictions of 20 pounds, and qualify that by saying that this would have to be under perfect ergonomics, e.g. back perfectly straight, the ability to lift without bending over, no twisting/bending during lifting, etc.
>
> His other activities would also have the restriction of no repetitive twisting/bending of the low back.
>
> I would not place any restrictions on how long he could be on his feet per day although I do think he should at least have the ability to sit or lie down for five minutes every hour, at least initially.
>
> My understanding is that Mr. McDiarmid wishes to be retained to do computer aided design in the Home Depot kitchen department and I would encourage retraining in that area.

(*Id.*). Dr. Ball's December 22, 2003 letter to plaintiff's attorney emphasized Ball's willingness to provide expert testimony in support of plaintiff's claim against AAA Insurance Company:

> As an expert witness, if I were asked by AAA as to whether I could testify that Mr. McDiarmid's condition was not related to the motor vehicle accident, I would have to decline in that I simply think this would be an embarrassing position to defend.

> Un[der] Michigan No-fault law, my understanding is that Mr. McDiarmid would still be eligible for 80% of his wage as well as other benefits for a period of three years from the time of the accident.
>
> It is also my understanding that he is experiencing significant personal stress from a financial standpoint, e.g. possible mortgage foreclosure, due to loss of income.
>
> It is my opinion, AAA is not acting in good faith in this particular situation and that not only is Mr. McDiarmid entitled to benefits under the no-fault law related to the motor vehicle accident, my personal feeling is that he should also be entitled to damages, if allowed under the law, related to loss of income, etc.

(A.R. 269).

On May 24, 2004, Dr. Ball noted that plaintiff's case against AAA was scheduled for mediation in June 2004. Dr. Ball observed that plaintiff's CT scan showed no evidence of any significant canal or foraminal compromise or compression of neural structures and there was no evidence to suggest a non-union. (A.R. 412).

On July 26, 2004, Dr. Ball wrote that plaintiff "settled his case with AAA regarding responsibility for his injury." (A.R. 410). Dr. Ball's second letter of July 26, 2004 attempted to reconcile his earlier letter to Home Depot emphasizing that plaintiff was capable of performing his job at Home Depot with certain restrictions and his contrary opinion that plaintiff was totally disabled, and thus entitled to social security disability benefits:

> It has come to my attention that this letter [of December 22, 2003] is being used against [plaintiff] for practical purposes in his application for Social Security Disability benefits.
>
> I think from a Social Security standpoint, particularly at this point in time, roughly eight months have passed since the letter just under discussion. I think that Mr. McDiarmid does meet the criteria for complete and total disability in excess of one year's duration.

(A.R. 411).

On February 4, 2005, Dr. Ball noted that plaintiff had experienced excellent results from epidural steroid injections. Plaintiff had only relatively mild pain, restricted to the lumbosacral junction. Plaintiff reported minimal sleep disturbance. (A.R. 398). On November 21, 2005, Dr. Ball wrote a letter stating that plaintiff's condition "appear[ed] to be a chronic/permanent problem for which he [would] most likely require some type of on-going treatment on a permanent basis." (A.R. 391).

On April 7, 2006, Dr. Ball wrote that he would be filling out a form for plaintiff's attorney supporting plaintiff's claim for DIB benefits:

> I think it would have to be a fairly restricted job that Anthony would qualify for in that it would require the ability to lie down frequently, probably ten minutes out of every hour on average and the ability to sit/stand on a regular basis.
>
> I do not think it could include any repetitive bending, lifting, stooping, and in essence would pretty much boil down to a desk type job where he could get up and down at will and has the ability to lie down frequently for periods of 10 to 15 minutes.
>
> I will be filling out a form for his lawyer regarding this. In my opinion, at this point, I would have to consider Anthony totally and permanently disabled from any reasonable job on anywhere near a full-time basis. Under this definition he would qualify for Social Security Disability and possibly other sources of disability income.

(A.R. 384). Later that day, Dr. Ball signed the "Lumbar Spine Residual Functional Capacity Questionnaire" (A.R. 415-19) which the ALJ gave "no weight." (A.R. 21).

The "treating physician rule" does not require the ALJ to give credence to the opinions of a doctor who has so patently adopted an advocate's position in favor of his patient. Dr. Bell's opinions, which are unsupported by objective findings and are obviously tailored to produce a certain legal result, were entitled to no weight. The ALJ, not the treating physician, determines the

credibility of claimant's subjective complaints and whether the claimant is disabled.  Plaintiff's argument that the ALJ failed to give appropriate weight to Dr. Ball's opinion is patently meritless.

### **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:   July 7, 2008             /s/  Joseph G. Scoville
                                  United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).